HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BANK OF THE PACIFIC, a Washington state chartered financial institution,<br><br>      Plaintiff,<br><br>  v.<br><br>F/V ZOEA, Official No. 619996, its Engines, Machinery, Appurtenances, etc., *in rem:*<br><br>and<br><br>N&M FISHERIES, LLC, a Washington limited liability company, *in personam,*<br><br>and<br><br>Brian S. Nelson and Michael J. Minor, *in personam*<br><br>      Defendants.<br><br>and<br><br>D&M LIVE CRAB, INC.<br><br>      Claimant. | IN ADMIRALTY<br><br>CASE NO. 3:15-cv-05758-RBL<br><br>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>DKT. 45, 46 |

THIS MATTER is before the Court on Plaintiff Bank of the Pacific's Motion for

Summary Judgment [Dkt. #45] and Claimant D&M Live Crab's Motion for Summary Judgment

ORDER - 1

[Dkt. #46]. Plaintiff Pacific seeks to enforce its maritime lien under a preferred ship mortgage secured by Defendant vessel F/V ZOEA and its appurtenances, including all commercial fishing licenses and fishing rights. Pacific contends a Washington Dungeness crab permit serves as collateral for the ship mortgage.

Brian Nelson and Michael Minor formed N&M Fisheries, LLC for a commercial crabbing venture. N&M purchased vessel F/V ZOEA and the crab permit together from the same sellers for $170,000 total. To fund the purchase, N&M obtained a ship mortgage from Pacific for $130,000. The ship mortgage was recorded with the United States Coast Guard and specifically listed vessel F/V ZOEA, commercial fishing licenses, and fishing rights as collateral. The vessel was registered to N&M, while the crab permit was registered in Nelson's name only.

The following year, Nelson used the permit as collateral to secure a loan from D&M, a local fish-processing facility that provides small loans to fishermen. To circumvent a Washington state law prohibition on security interests in commercial fishing permits, Nelson "sold" the permit to D&M for $100,000, and D&M's ownership was registered with the State. Nelson and D&M agreed D&M would transfer the permit back to Nelson when his loan was re-paid.

N&M defaulted on its ship mortgage, and Pacific sued to enforce its security in the vessel and in the permit, now possessed by D&M. The issue is whether Pacific's security interest reached the permit—a large portion of the value of the vessel. The answer hinges on two questions: whether ship mortgage lenders can obtain a security interest in Washington shellfish and food fish commercial permits and, if so, whether N&M had a resulting trust in the permit held in Nelson's name.

1      D&M argues Pacific's ship mortgage never reached Nelson's permit because Washington
2 law prohibits liens in commercial shellfish and food fish permits. Pacific defends its security
3 interest as valid under federal law, arguing the federal Ship Mortgage Act preempts the state law
4 prohibition. D&M counters that the Ship Mortgage Act does not preempt the state law, but, even
5 if it does, Pacific cannot have a security interest in this crab permit because it was never
6 registered to Pacific's debtor, N&M. Pacific responds that at the formation of the ship mortgage,
7 all parties intended the permit to be included as collateral, so a resulting trust was created in
8 favor of N&M when the permit was registered to Nelson. Furthermore, Pacific seeks a
9 determination that D&M's interest is invalid because it is in effect a security interest formed
10 outside of a ship mortgage, which Washington law prohibits.[1]

11        **I.      DISCUSSION**

12      Summary judgment is appropriate when, viewing the facts in the light most favorable to
13 the nonmoving party, there is no genuine issue of material fact which would preclude summary
14 judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to
15 summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to
16 interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for
17 trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of
18 evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v.*
19 *Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not
20 affect the outcome of the suit are irrelevant to the consideration of a motion for summary

---

[1] Washington law does not prohibit D&M from making a self-imposed obligation to return permits to sellers. *See* RCW 77.65.070(2). Rather, it prevents sellers from possessing a legally enforceable claim for a permit's return if the buyer reneges on its self-imposed obligation. *See id.* D&M's business practice therefore accords with Washington law.

judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1221.

**A.     The Ship Mortgage Act Preempts RCW 77.65.070(2).**

D&M argues Pacific's preferred ship mortgage never attached to Nelson's permit because Washington law prohibits security interests in commercial shellfish and food fish permits. It argues RCW 77.65.070(2) renders any such lien invalid. Pacific responds its ship mortgage reached the permit because it was created under the Ship Mortgage Act, a federal maritime law that preempts RCW 77.65.070(2). D&M contends the Ship Mortgage Act does not preempt the state law because there is no express preemption, it does not completely occupy the field, and simultaneous compliance with both laws is possible.

The Ship Mortgage Act is an integral part of maritime law. *See The Thomas Barlum*, 193 U.S. 21, 38–42 (1934). It promotes investments in ships by facilitating vessel financing and by establishing the priority of preferred ship mortgages in relation to other liens. It was passed to stimulate private investment in U.S. shipping and to protect the United States as a principal source of credit. *See Seattle First Nat. Bank v. Bluewater Partnership*, 772 F.2d 565, 569 (9th Cir. 1985). Preferred ship mortgages are recorded with the United States Coast Guard and have priority over other types of maritime loans. *See* 46 U.S.C. § 31321. Prior to the Ship Mortgage Act's enactment, mortgage securities on ships were practically worthless. *See The Thomas Barlum*, 293 U.S. at 39.

Washington revised its laws relating to commercial fishing licenses to reduce complexity and to remove inequities. *See* S.B. 5124 53rd Leg., Reg. Sess. (Wash. 1993) (bill digest). RCW

77.65.070(2) furthers this end by prohibiting liens on commercial fishing licenses: "No security interest or lien of any kind, including tax liens, may be created or enforced in a [Washington commercial shellfish or food fish] license." The permits may be sold, but they cannot be used as collateral for a loan.

Conflict preemption occurs "where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (internal quotation marks and citations omitted). State law may supplement maritime law, but it must yield when it interferes with harmony and uniformity, *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447 (1994), or where it would defeat reasonably settled expectations of maritime actors, *Persson v. Scotia Prince Cruises, Ltd.*, 330 F.3d 28, 32 (1st Cir. 2003).

Maritime actors have a reasonably settled expectation that maritime liens can attach to permits. *See, e.g., Gowen, Inc. v. F/V Quality One*, 244 F.3d 64, 68 (1st Cir. 2001); *see also Fuller Marine Services, Inc. v. F/V WESTWARD*, No. 15-212, 2015 WL 5674828, at *2 (D. Me. Sept. 24, 2015); *Offenbacher v. Ahart*, No. 07-326, 2009 WL 523097, at *7 (D. Or. Feb. 25, 2009). Commercial fishermen rely on ship mortgages to fund the purchase of vessels, supplies, and valuable permits. To make their investments worthwhile, lenders need a security interest in permits where vessels "are valuable significantly, and sometimes almost entirely, because of their permits." *Gowen*, 244 F.3d at 68. Leaving each state to decide if its permits can be included as collateral in ship mortgages disrupts uniformity and discourages investments where a permit holds a significant portion of the collateral's value. RCW 77.65.070(2) disrupts harmony and uniformity in maritime law by interfering with maritime actors' settled expectations. Therefore,

the Ship Mortgage Act preempts RCW 77.65.070(2). Ship mortgage lenders can have a security interest in Washington commercial fishing permits appurtenant to a mortgaged vessel.

**B.     Pacific's Ship Mortgage Encumbered the Permit Held in Trust by Nelson.**

D&M argues that even if the Ship Mortgage Act preempts state law, Pacific's ship mortgage could not have reached Nelson's permit because it was never held by Pacific's mortgagor, N&M. Pacific asserts N&M provided consideration for its permit through its ship mortgage, and Nelson held it in trust for N&M the moment he took title. D&M responds there was no resulting trust because Nelson treated the permit as his own property and unilaterally sold it.

In Washington, when property is taken in the name of a grantee other than the person advancing the purchase money, in the absence of other evidence of intent, that grantee is presumed to hold legal title subject to the equitable ownership of the person advancing the consideration. *See Thor v. McDearmid*, 63 Wash. App. 193, 206, 817 P.2d 1380 (1991). The intention that beneficial interest in the property not go with its legal title may be inferred from accompanying facts and circumstances. *See id.* at 205. Washington Department of Fish and Wildlife filings usually put permit buyers on notice of who owns a permit.

While N&M purchased this crab permit, it was inexplicably registered in Nelson's name only. The accompanying facts and circumstances indicate Nelson did not have a beneficial interest in the permit even though he unilaterally transferred it to D&M. N&M obtained a $130,000 mortgage from Pacific listing "fishing rights" and "commercial fishing licenses" as collateral. N&M used its mortgage money to fund its $170,000 purchase of both the vessel and the permit, in the same transaction from the same sellers. It is clear the mortgage terms "fishing rights" and "commercial fishing licenses" referred to the $100,000 crab permit included in the

purchase, because Pacific would not have loaned $130,000 for N&M to purchase a $70,000 vessel only. N&M needed the full $130,000 loan amount to also purchase its $100,000 crab permit. N&M would have been entirely unable to pursue its business without the permit, and its ship mortgage would have been reduced had the permit not been included as collateral. Furthermore, Nelson's "sale" of the permit did not obviate N&M's interest. He transferred a permit already encumbered by Pacific's ship mortgage. D&M took possession assuming the risk by working around a statute seemingly designed to protect future lenders. Nelson had no beneficial interest to convey to D&M.

The facts and circumstances surrounding the creation of the ship mortgage show Nelson, Minor, N&M, and Pacific all intended to include the permit as collateral in the ship mortgage, and the beneficial interest of the permit was intended to stay with N&M. Therefore, the permit attached to the ship mortgage the moment N&M purchased it, and a resulting trust in favor of N&M was created when the permit was filed in Nelson's name.

## II.   CONCLUSION

The Ship Mortgage Act preempts RCW 77.65.070(2), and Pacific's ship mortgage can, and did, reach the permit held in Nelson's name. The facts and circumstances surrounding the creation of N&M's ship mortgage demonstrate the contracting parties intended Pacific's mortgage to encumber vessel F/V ZOEA and all of its appurtenances, including the crabbing permit, in which N&M created a purchase money resulting trust. Although D&M's self-imposed business practice accords with RCW 77.65.070(2), Nelson's unilateral sale to D&M did not obviate Pacific's interest in the permit because it was not his to convey. D&M purchased an encumbered permit.

1  Pacific's Motion for Summary Judgment [Dkt. #45] is **GRANTED**. D&M's Motion for
2  Summary Judgment [Dkt. #46] is **DENIED**.
3  IT IS SO ORDERED.
4  Dated this 2nd day of March, 2017.

*[signature]*

Ronald B. Leighton
United States District Judge